# THE SUPREME COURT

OF

# PENNSYLVANIA.

163
f221

1,
²231

## Franklin's Appeal.  Office Costs.

*Judges—Adjudication—Costs—Hearing—Practice.*

A judge of the court of oyer and terminer and of the quarter sessions cannot, upon his own motion, without notice and without hearing any of the parties affected, on examination of the complaints and indictments in certain cases at the previous session of the court, and upon private inquiries, make an adjudication of the office costs in said cases and file it " subject to exception in writing by the respective officers concerned and hearing upon the same."

A judge may of his own motion initiate an investigation for the correction of evils in the administration of justice, but he must proceed in an orderly and judicial manner, such as calling the attention of the grand jury to the matter, directing the district attorney to investigate, or, if the latter is interested, appointing a special prosecutor pro hac vice, or a commissioner with defined powers of inquiry, or conducting an open investigation himself at the proper time when a particular case is judicially before him.

*Criminal law—Joint indictment—Discretion of officer.*

The question of the expediency of jointly indicting prisoners is for the district attorney, and not for the judge to determine. No allegation that the district attorney abused his discretion in such a case can be sustained where it appears that the joint commission of the offence was a material and contested point at the trial.

Argued May 31, 1894.  Appeal, No. 48, July T., 1894, by Walter M. Franklin, district attorney, from order of O. & T.

and Q. S. of Lancaster Co., adjudicating office costs in cases disposed of at Nov. Sessions, 1893, and dismissing exceptions filed. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Reversed.

Adjudication of office costs.

From the record it appeared that, on Dec. 4, 1893, the court, BRUBAKER, J., handed down from the bench to the clerk of the court of quarter sessions a paper which was ordered to be filed.   The paper was indorsed as follows: " Opinion of the court.   An adjudication of the office costs in the cases disposed of at the November sessions of the said court on complaints and indictments."

The opinion on the items discussed in the opinion of the Supreme Court was as follows :

" The court, upon an examination of the complaints and indictments in the following named cases, has deemed it necessary to make the following adjudication, subject to exception in writing by the respective officers concerned and a hearing upon the same."

" 3. Com. v. Archey, Nos. 27 and 28.   Complaints, robbery and felonious assault and battery.   Verdicts, guilty.

" Com. v. Good, Nos. 29 and 30.   Complaints, robbery and felonious assault and battery.   Verdicts, guilty.

" Two complaints against each defendant in these cases were made and returned by the magistrate, on which four indictments were found.   The two offences were committed by the two defendants together.   Under the law two complaints only should have been taken and returned and entered, and but two indictments should have been found.   Therefore, costs can be allowed only to the respective officers concerned on but two complaints and two indictments, and the balance of the costs is disallowed.

" 4. Com. v. McDonnell, Nos. 40, 41 and 43.   Complaints, assault and battery, two, and surety of the peace.

These cases are evidently duplicates.   They are against the same person, by the same prosecutor, for the same offence, and alleged to have been committed at the same time, to wit, on Monday, the 4th day of September, 1893.   Therefore, costs can be allowed only on one complaint and indictment to the respec-

tive officers concerned, and the balance of the costs is disallowed. The complaint for surety of the peace was dismissed by the court.

".5. Com. v. Yeager, Nos. 46 and 47. Complaints, felonious assault and battery and surety of the peace.

" 6. Com. v. Kemmerley, Nos. 48 and 49. Complaints, felonious assault and battery and surety of the peace.

" 7. Com. v. Foulk, Nos. 50 and 51. Complaints, felonious assault and battery and surety of the peace.

" These cases were entered into the court on separate complaints by one and the same prosecutor, for the same offences alleged to have occurred at one and the same time. The complaints on which the indictments were drawn should have been included in but one complaint and but one indictment found, and the surety of peace cases, being offences which merged in the greater offences of assault and battery, should not have been entertained by the magistrate. This is an example of apparent multiplication of cases, which the court will not allow, and therefore costs will be allowed to the respective officers concerned on but one complaint and one indictment for the assault and battery, and to the magistrate and the constable no costs on the surety of the peace cases."

" 10. Com. v. Albert Dunlap, No. 89. Complaint, malicious trespass. Verdict, guilty.

" Com. v. John G. Lawrence, No. 90. Complaint, malicious trespass. Verdict, not guilty.

" These complaints are duplicates, in identically the same language. The costs of the officers will, therefore, be allowed on one complaint and one indictment and the balance of the costs is disallowed.

" 11. Com. v. Albert Dunlap, No. 91. Complaint, larceny. Verdict, guilty.

" Com. v. John G. Lawrence, No. 92. Complaint, larceny. Verdict, not guilty.

" These cases are in the same position as the above cases. Costs of officers will, therefore, be allowed on but one complaint and indictment and disallowed as to the balance.

" 12. Com. v. Albert Dunlap, No. 94. Complaint, felonious entry. Verdict, guilty.

" Com. v. John G. Lawrence, No. 95: Complaint, felonious entry.   Verdict, not guilty.

" There is the same objection to these two cases.   The costs of the officers will, therefore, be allowed upon but one indictment and one complaint, and disallowed as to the balance."

" 19. Com. v. Reinhart, No. 137.   Complaint, assault and battery.   Ignored.

" Com. v. Steinwandle, No. 138.   Complaint, assault and battery.   Ignored.

" Com. v. Pfeffer, No. 139.   Complaint, assault and battery. Ignored.

" Com. v. Fritz, No. 140.   Complaint, assault and battery. Ignored.

" As these four complaints were for the same offence, committed at the same time, against the same prosecutor, and all four were joined in the one indictment found by the grand inquest, as required by law, the costs of the officers are allowed only on one complaint and one indictment, and disallowed as to the remainder.   In these cases the grand jury ignored all four of the complaints sent up and themselves incorporated all the defendants in one indictment."

" 23. Com. v. Rudolph Rote, No. 157.   Complaint, malicious mischief.   Not guilty.

" Com. v. Catharine Zerphy, No. 158.   Complaint, malicious mischief.   Not guilty.

" These cases are duplicates, and for the reasons given above the costs of the officers are allowed on but one complaint and indictment, and are disallowed as to the other.

" 24. Com. v. Rudolph Rote, No. 156.   Complaint, forcible entry and detainer.   Not guilty.

Com. v. Catharine Zerphy, No. 159.   Complaint, forcible entry and detainer.   Not guilty.

" These cases are duplicates, and for the reasons given above the costs of the officers are allowed on but one complaint and are disallowed on the other."

" 29. Com. v. William Harris, No. 217.   Complaint, horse stealing.

" Com. v. Tilghman Clemson, No. 218.   Complaint, horse stealing.

" These complaints are duplicates, being for a larceny of the

same property and at the same time, and under the law the offences are required to be joined in the same bill of indictment. Costs of officers are, therefore, allowed on but one complaint and one bill of indictment, and disallowed on the other."

"40. Com. v. Jacob Moore and Rebecca Moore, Nos. 333 and 334. Complaints, keeping a disorderly house.

"These complaints being duplicates, the cost of the officers are allowed upon one complaint and one indictment, and disallowed as to the others."

"There are other abuses, which we have not the time now to investigate. We have given this matter speedy attention during our spare moments between jury trials, having examined three hundred and fifty-seven cases, in order that the moneys due by the county to the magistrates and the constables, some of whom are innocent, can be promptly paid to them. In case any of the officers affected by this adjudication do not desire a reinvestigation, which they can have, if they think themselves aggrieved, as we have indicated above, all bills made out in conformity with the opinion can now be paid. The costs in all cases at this session not herein mentioned, are also allowed and directed to be paid."

No notice had been given to the persons affected by the adjudication, and there was no previous hearing. Walter M. Franklin, Esq., district attorney, presented his bill for fees in cases disposed of at November Sessions, 1893. Payment was refused in all cases covered by Judge BRUBAKER's decision. Mr. Franklin then filed exceptions. Depositions of the district attorney were taken, and the case put on the argument list and heard. The exceptions were dismissed by the court in the following opinion by BRUBAKER, J.:

"In looking over the unusually large list of criminal suits for trial returned by the magistrates at the November Sessions, 1893, I deemed it necessary to draw attention to it in my charge to the grand inquest, and at the same time proceeded to institute an investigation. I gave the subject immediate attention, and on December 4, 1893, filed an opinion adjudicating the costs and the fees in the cases returned to that term. In this opinion I requested the officers, if they felt aggrieved, to file exceptions in writing, in order that they might present their objections to the court for consideration and determination. The district

attorney alone filed exceptions, and has given us the opportunity of reviewing the work. We have purposely, as well as from necessity, taken ample time to consider the subject as coolly and deliberately as the very serious character of the charges required. This was due to the district attorney, as well as to those parties who are interested in the proper administration of justice.

" In going over the work again, however, no sufficient reason suggests itself to me why I should disturb the adjudication then made. After a careful review of the facts and the law, we have been unable to find error. In several instances we have used the word 'indictment' inadvertently with the word 'complaint,' in which there was a consolidation of the complaints in the indictment, and to these cases we shall refer more at length when we come to pass upon them.

" The existence of the evil which we are endeavoring to remedy is so well understood by the profession, and the law relating to the subject of consolidation of suits is so familiar to the bar that it would scarcely be necessary to discuss the matter at length, in order to justify our former deliverance, were it not for the exceptions before us now under consideration. These exceptions are :

" 1. The district attorney hereby excepts to the adjudication in its entirety, and to each and every item contained in it; the items not being numbered, it is impossible to refer to them by enumeration.

" 2. These exceptions are based on the misstatements of fact and of law, and on the unjust conclusions contained in said adjudication.

" Subsequently additional exceptions were allowed to be filed by the exceptant, to the number of forty-four, which we shall now proceed to pass upon.

" It is the plain duty of courts to guard against oppression, not only as a matter of right to parties litigant, but that the community may have confidence in the administration of justice. In civil actions, in order to avoid the evil, the universal practice is to consolidate suits that are brought evidently for the purpose of increasing the costs of litigation. We will cite but one case as a fair illustration of the principle. The question of multiplication of suits was brought to the attention of

the Supreme Court of Pennsylvania as early as the year 1844, in the case of Towanda Bank v. Ballard, 7 W. & S. 434. . . .

" The object sought to be accomplished by us in our late investigation of the matter at issue here is to prevent the bringing of more than one complaint by the magistrate, and the drawing of more than one indictment by the district attorney, where one complaint and one indictment would answer. The question is not whether the law will sentence or punish the offender on several indictments on which he has been found guilty, but whether the offences charged should not have been incorporated in one indictment. A prisoner may be sentenced separately under different counts in the same indictment for different offences of the same nature. With a view, therefore, to the question of necessity alone, in reference to the pleading, we shall proceed to dispose of the matter to which our attention has been directed."

. After citing authorities for the joinder of several offences in one indictment, Com. v. Birdsall, 69 Pa. 482 ; Com. v. Shutte, 130 Pa. 272, and the act of March 31, 1860, § 65, as to costs, the court took up the exceptions as follows :

" Exceptions numbers 5, 6 and 7 : It is true, as the district attorney has said in his argument, that these cases were settled before the term of court, and therefore no indictments were drawn. This fact, however, we recognized at the time we made our adjudication, but as we were passing on all cases returned to the November Sessions, we could not allow the fact to pass unnoticed that the fees of the district attorney as well as of the clerk had been taxed and paid on all of these complaints, the same as if indictments had been drawn and the matters had been submitted to the grand jury ; but we were mistaken, however, in saying that indictments were drawn. Our conclusions being correct, we therefore dismiss these exceptions.

" Exception No. 4 : These are cases brought by the same prosecutor against the same defendant for two acts of simple assault and battery, committed on the same day, to wit : Monday, the fourth day of September, 1893. As we have said before, we say now, there was no necessity whatever to make more than one indictment in these cases. The district attorney's excuse for not consolidating these cases in the same in-

dictment is, on account of the acts having been committed at different hours of the same day and at different places, one assault having been made in the city and the other in the country.   Was it necessary for the purpose of meting out justice to the defendant that two complaints should have been made, or, if made, that two indictments should have been framed thereon ?   It seems to us that the mere statement of the proposition is sufficient to show that an allowance of more than one complaint and one indictment would be a case of oppression.   If two complaints were allowed, upon the same principle any number of complaints could be consistently made.   The Criminal Code of March 31, 1860, section 97, had this very question in view when it fixed the maximum punishment for this offence at a fine of one thousand dollars and imprisonment of one year. The usual sentence of the court for one simple act of assault and battery is a fine of from one to twenty-five dollars and no imprisonment, it being considered a petty crime ; but where there has been an aggravation of circumstances surrounding the commission of the crime, as subsequent assaults or attacks, or other ill treatment and abuse, these acts are evidence in the case, for the purpose of justifying the court in the infliction of a greater punishment, equal, if necessary, to the limit of the maximum punishment allowed by the law.   It will be seen that the maximum punishment in a case of simple assault and battery is sufficient to punish a large number of acts committed by the same person against the same prosecutor.

"Our main text work on this subject, American Criminal Law, by Wharton, says, in speaking of the joinder of offences of this kind in the same indictment: 'It is the constant practice to receive evidence of several assaults on the same indictment:' Section 414.   So, also, in criminal prosecution for libel: Id., 2d section, 414.   The reason of the rule is obvious. It can be none other than to avoid multiplicity of prosecutions. There being, therefore, no necessity for two indictments in these cases, we adhere to our former adjudication, and dismiss the exception."

"Exception number 19.   In the cases comprised under this exception we said in our former adjudication that all four were joined in the same indictment, and that the grand jury ignored all four of the complaints set up, and they themselves incorpo-

rated all the defendants in one indictment. We have no reason to change our view in this matter in our reinvestigation. We find that the information we .then received directly was correct; that there was an attempt to have at least three indictments made upon three of the complaints, but that the grand jury had informed the prosecuting officer that the evidence warranted a consolidation. The face of the indictment shows that but one of the defendants had been put in the indictment originally, that is the name of Henry Reinhart, and that subsequently the names of Isadore Pfeffer, A. Steinwandeɪ and John Fritz were interlined. The exception is therefore dismissed."

" Exceptions numbers 10, 12, 23, 24, 29 and 40. In these cases there were duplicates of complaints returned and filed. The district attorney, however, consolidated them respectively in the same indictment; and the court in using the phrase, ' costs can only be allowed on one complaint and one indictment,' should have left out the word ' indictment.' These were very slight clerical mistakes, but not of such a character as to affect the question of costs of the district attorney's office."

*Errors assigned* were (1) in assuming jurisdiction; (2) decree; (3–86) in dismissing exceptions to adjudication, quoting them.

*W. U. Hensel, H. M. North* and *John G. Johnson, J. Hay Brown*, with them, for appellant, cited: Bill of Rights; Act of March 31, 1860, P. L. 388; Grieb v. Kuttner, 26 W. N. 323; Owen's Ap., 78 Pa. 511; Com. v. Nicely, 130 Pa. 270; Com. v. Simons, 6 Phila. 167; Com. v. Morton, 12 Phila. 595; Hunter v. Com., 79 Pa. 503.

*George A. Lane*, county solicitor, for appellee.—The court has inherent power to strike from a bill of costs what is improperly there: Towanda Bank v. Ballard, 7 W. & S. 434.

OPINION BY Mr. JUSTICE MITCHELL, July 11, 1894:

This proceeding is so irregular, and, happily for our judicial history, so entirely unprecedented, that it seems to require a recital of the main facts. The judge, upon his own motion, without notice and without hearing any of the parties to be

affected, on examination of the complaints and indictments in certain cases at the previous session of the court, and upon private inquiries, the nature and extent of which and the parties to whom addressed are known only to himself, made what he termed an adjudication of the office costs on said cases, and filed it " subject to exception in writing by the respective officers concerned and a hearing upon the same." Grosser violation of all judicial principles, short of actual dishonesty, cannot be conceived. No citizen could be deprived of the most trifling right, nor the meanest criminal be condemned, by an adjudication first and a hearing afterwards, yet in this case the money rights of sworn public officers, and the reputation of a member of an honorable profession are sought to be taken away by such method.

Even if the result reached were correct, the method could not be tolerated. Conclusions based merely on the formal averments of complaints or indictments, without any knowledge of the evidence, or the real facts, could hardly help frequently going astray, and an examination of the only evidence in this case, taken after the "adjudication," shows that the conclusions were as unjust as the proceeding was irregular. It is not desirable to incumber this opinion with a detailed review, but a few instances of error in fact may be referred to as illustrations. In item 3, Com. v. Archey, and Com. v. Good, the adjudication says: " The two offences were committed by the two defendants together; . . . . but two indictments should have been found. Therefore costs can be allowed . . . on but two indictments." The deposition of the district attorney shows that the joint commission of the offence was denied by the prisoners, was a contested point at the trial, and that "it would have been inexpedient for the due course of public justice to venture to jointly indict the defendants." The question of expediency was for the district attorney, not for the judge, to determine. The responsibility for a misjoinder would have been on him, and he was entitled to his own judgment on the subject. If he carelessly or corruptly abused his discretion, there was plain and ample remedy by due course of law, but no allegation of such abuse could be maintained in face of the fact that the joint commission of the offence was a material and contested point at the trial.

In item 4, Com. v. McDonnel, the adjudication says: " These cases are evidently duplicates; . . . . costs can be allowed only on one complaint and indictment." The deposition of the district attorney shows that the cases had not been tried, so that even under regular proceedings the court had not yet acquired any jurisdiction over the matter of costs, but in fact the two indictments were for separate offences, committed at different places and at different times, though on the same day. No more striking demonstration could be made of the danger of basing a conclusion on the formal averments of the bill of indictment. Of the view expressed by the learned judge in his opinion dismissing the exceptions, that the mere statement of the proposition is sufficient to show that more than one indictment would be oppression, it is enough to say that we do not concur in it, but the decision of that question in the first instance is neither for him nor for us, but for the district attorney, and the time for showing an abuse of his discretion, if any existed, had not yet arrived. As to the further view that the maximum punishment of assault and battery is sufficient to punish a large number of acts committed by the same person against the same prosecutor, the lawmaking power has determined otherwise, and it is not for a judge who has not yet heard the case to say what indictment or what punishment would be sufficient.

In items 5, 6, and 7, Com. v. Yeager, Com. v. Kemmerly and Com. v. Foulk, the adjudication says: " These cases were entered on separate complaints by one and the same prosecutor, for the same offences. . . . The complaints on which *the indictments were drawn* should have been included in but one complaint *and but one indictment found.* This is an example of apparent multiplication of cases which the court will not allow, and therefore costs will be allowed on but one complaint and one indictment." It appears that no indictments were ever drawn in these cases, they having been settled before the grand jury met. This was a singularly unfortunate selection by the learned judge, of an example, for it was not a conclusion wrong because founded on insufficient or misleading evidence, but gross carelessness in finding facts from evidence before him which plainly disproved their existence. That errors should occur is incident to humanity, but carelessness in a judge is

never excusable, and least of all when he is stepping out of the regular course of judicial proceedings, even with the best intentions, to affect the rights of others.  If, as is implied in the opinion, costs were taxed to the district attorney as if for indictments which were never drawn, that was a serious error which demanded correction, but the district attorney was entitled to a hearing before condemnation.

In items 10, 11, 12, 23, 24, 29 and 40, similar carelessness is shown in making orders disallowing costs on all but one complaint and one indictment in each case; and in a like order in item 19 it is said: "The grand jury ignored all four of the complaints sent up, and themselves incorporated all the defendants in one indictment."  In each of these instances the district attorney deposes that he consolidated the complaints, and drew a single indictment, and that the grand jury had nothing to do with the matter.  It would thus appear that the district attorney himself did exactly what the learned judge condemns him for not doing.  It is a very inadequate explanation or reparation to the officer unjustly condemned, to say, as the learned judge does in his opinion, that he "used the word indictment inadvertently with the word complaint" and that "the court in using the phrase 'costs can only be allowed on one complaint and one indictment' should have left out the word indictment.  These were very slight clerical mistakes, but not of such a character as to affect the question of costs of the district attorney's office."  An inadvertency which includes the district attorney in a condemnation meant only for committing magistrates requires ampler apology than this, and to call a mistake slight and clerical because it does not affect the officer's pocket while it does seriously impugn his professional character shows a lack of judicial appreciation which exemplifies the dangers where a judge goes outside of his proper province.

In regard to item 19, the learned judge in his opinion says, "We have no reason to change our view in this matter in our reinvestigation.  We find that the information we then received directly was correct," and proceeds to state what the grand jury did.  What this information was, from whom obtained, whether under sanction of an oath or not, and what means of knowledge the informant had, are matters known only to the

judge who assumed the functions of prosecutor, jury and court, and perhaps of witness also, if the reference to what the face of the indictment shows, means to express his personal opinion from inspection of the paper. To set aside the sworn deposition of the district attorney on such information as this, is inquisitorial not judicial action.

These examples will suffice. The opinion of the learned judge in dismissing the exceptions is occupied chiefly by discussion which is wide of the mark. The matter which he undertook to examine, even in this irregular way, was not whether the offences charged could as matter of law be joined in single indictments, but whether, in the particular cases, they were properly separated.

It is not intended in this opinion to say that a judge may not, of his own motion, initiate an investigation for the correction of evils in the administration of justice. He is the responsible head of his court, and if he has reason to suspect wrongs or irregularities it is not only his right but his imperative duty to see to their correction. But he should proceed in an orderly and judicial manner, such as calling the attention of the grand jury to the matter, directing the district attorney to investigate, or, if the latter is interested, appointing a special prosecutor pro hac vice, or a commissioner with defined powers of inquiry, or conducting an open investigation himself at the proper time when a particular case is judicially before him. The legal remedies are ample and effective, but none of them permits a judgment before a hearing. A judge never serves either law or justice by proceeding lawlessly, or forgetting that a court is a tribunal where justice is judicially administered. Actual justice may be done and sometimes effectively by the summary action of a vigilance committee or a mob of lynchers, but it is not done judicially, and the dangers are such as no civilized community can afford to tolerate. Deliberate and orderly proceedings, including, as a foremost requisite, a full and impartial hearing before judgment, are the inviolable safeguards of public justice as well as of individual liberty.

With the best intentions, no doubt, and under the belief that the situation required extraordinary action, the learned judge nevertheless adopted a method which cannot be sanctioned. The whole proceeding was non-judicial, void in form and in substance, and it is ordered to be struck off the record.