Commonwealth *v.* Comber, Appellant.

Argued November 20, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*John Patrick Walsh,* with him *Leon Rosenfield* and *Walsh, Tubis & Dunn,* for appellant.

*Americo V. Cortese,* Assistant District Attorney, with him *John Maurer,* District Attorney, for appellee.

OPINION BY ARNOLD, J., March 18, 1952:

James Comber appeals from a conviction of assault and battery upon one Madden. Previously he had been tried before a single jury and acquitted on indictments (a) for murder and (b) voluntary and involuntary manslaughter.

In the instant trial the defendant, alleging the verdicts of not guilty in the murder and manslaughter indictments, interposed a special plea of autrefois acquit, and now asserts that the adverse ruling thereon was error.

In the murder and manslaughter indictments the jury had to be convinced beyond a reasonable doubt that Madden died as a result of the wounds inflicted by appellant, and at that trial the defendant claimed that such was not proved.

Appellant argues that the verdict of not guilty in the homicide trials was a finding of his innocence. This is a colloquialism and as a matter of law is incorrect. Such a verdict only established that the Commonwealth did not prove, beyond a reasonable doubt, one or more

of the ingredients necessary to convict. In *Commonwealth v. Greevy*, 271 Pa. 95, 114 A. 511, the defendant had been acquitted on an indictment charging murder; was thereafter placed on trial for involuntary manslaughter and convicted; and on his appeal the Supreme Court said (page 101) : ". . . but this [the verdict in the murder indictment] does not mean, as defendant asserts, that every defense he interposes [on the murder indictment] is established, for he cannot point to any one of those defenses, and say it was upheld by the jury." In the instant case there was no finding by the jury in the murder and manslaughter indictments that this defendant was upheld as to any one of the defenses he presented.

In *Commonwealth v. Moon*, 151 Pa. Superior Ct. 555, 560, 30 A. 2d 704, our now President Judge RHODES stated : "The test in the plea of autrefois acquit . . . is whether the evidence necessary to support the second indictment would have been sufficient to procure a legal conviction upon the first . . . [citing, inter alia, Commonwealth v. Forney, 88 Pa. Superior Ct. 451]."

Obviously the evidence in the present assault and battery case would not have been sufficient to secure a conviction in either the murder or manslaughter trial, if for no other reason than because the Commonwealth did not offer evidence that the assault and battery caused the death of Madden.

Therefore on this branch of the case the only question is whether the jury in either the murder or manslaughter indictments could have found the defendant guilty of assault and battery. As to murder and voluntary manslaughter, it is clear that such a verdict could not have been received : *Commonwealth v. Adams*, 2 Pa. Superior Ct. 46, which is cited with approval in *Commonwealth v. Komatowski*, 347 Pa. 445, 456, 32 A. 2d 905. There seems to be no appellate court decision

whether a verdict of assault and battery or aggravated assault and battery may be received in a trial for involuntary manslaughter; but in Pennsylvania no experienced judge submits either to the jury. In *Commonwealth v. Ireland,* 149 Pa. Superior Ct. 298, 302, 27 A. 2d 746, this Court stated: ". . . the degree of proof necessary for a conviction in a prosecution for assault and battery or aggravated assault and battery is greater than that necessary for a conviction of involuntary manslaughter. For the gist of the latter offense is that the injury resulting in the death must be unintentional; if it is intentional, or malicious, it is felonious homicide . . ." See also *Commonwealth v. Bergen,* 134 Pa. Superior Ct. 62, 4 A. 2d 164. On the other hand, intent is a necessary element in assault and battery.

It is argued that the indictment in the involuntary manslaughter case charges, inter alia, that the defendant "made an assault [on Madden]." The word "assault" in such an indictment is surplusage, for the Act of Assembly[1] states that it is only necessary to charge that the defendant "did unlawfully kill and slay the deceased." The word "assault" as used in the indictment was not only surplusage, but must be treated in its purely technical sense of an invasion of the rights of the deceased.

When the death of an infant child is caused by the neglect of the parents properly to care for it or to furnish medical aid (where no intention to kill exists) it is involuntary manslaughter. In such type of case there is no assault except in the purely technical sense. It will

---

[1] Act of 1871, P.L. 244, 19 PS §352: "In any indictment for involuntary manslaughter it shall not be necessary to set forth the manner in which or the means by which the death of the deceased was caused, but it shall be sufficient in every indictment for involuntary manslaughter to charge that the defendant did unlawfully kill and slay the deceased."

be noted also that the involuntary manslaughter indictment charged no battery, giving further evidence that criminal assault and assault and battery were not intended to be charged. We have no hesitation in saying that the question of assault and battery should not be submitted to the jury on a trial for involuntary manslaughter. Even where a defendant is put on trial for murder and the jury sworn, and, without defendant's acquiescence or any absolute necessity, the jury is discharged before verdict, the defendant cannot plead former jeopardy except as to first degree murder, and may be tried again for second degree murder or voluntary manslaughter: *Commonwealth v. Simpson,* 310 Pa. 380, 165 A. 498.

Therefore the court correctly ruled that the plea of autrefois acquit was bad.

On the other branch of the case the defendant claims that there was "a res adjudicata," in that the evidence in the second trial was the same as in the murder and manslaughter indictments in the instant case. As we have pointed out, the evidence was not the same, but even if it were there is no such thing as res adjudicata *based upon identity of evidence.* As stated in the Greevy case, supra, at page 100, " 'The failure of the Commonwealth to convict of the higher crime does not preclude her from establishing a lesser crime, even though arising from the same state of facts. The evidence necessary to establish involuntary manslaughter is essentially different from that required to support an indictment for murder.' To which may be added that in this, as in all other cases, 'the question whether the former acquittal was for the same offense depends upon the record pleaded, and not on the arguments or inferences deduced therefrom.' " Acquittal of murder did not amount to finding him not guilty of an unlawful killing. At pages 101, 102, the Court considered res adjudicata in criminal

cases, and stated: "This comparison also shows clearly the fallacy of defendant's argument that there was some fact established in his favor at the murder trial which was essential to his conviction of involuntary manslaughter. Every one admits that res adjudicata conclusively determines not only the ultimate fact established by a verdict and judgment, but every other fact necessarily found in reaching the conclusion as to that ultimate fact; but this does not mean, as defendant asserts, that every defense he interposes is established, for he cannot point to any one of those defenses, and say it was upheld by the jury. Nor does it follow that because the evidence is the same in the two cases,—even if we assume there was not the slightest difference,—that the defeating of one action concludes also the other. In each case there was an inference to be drawn by the jury from the evidence; to convict in the first it would have had to infer an intent to wound or kill, which it refused to do; to convict in the second it had to infer there was no intent to wound or kill, which it did, thereby agreeing with the first jury. The inference, in each case, however was for the jury, and not for the court; and the fact that the evidence was the same in each, does not alter this, but, on the contrary, strengthens the conclusion of the accuracy of the last finding, since two juries, on the same evidence, have reached a like conclusion, viz, that there was a reckless or careless killing and not an intentional one."

The judgment of sentence is affirmed, and it is ordered that the appellant appear in the court below at such time as he may there be called, and that he be by that court committed until he has complied with his sentence, or any part of it which had not been performed at the time the appeal was made a supersedeas.