## Commonwealth v. Fabrizio

*Albert Aston*, district attorney, and *Arthur Silverblatt*, assistant district attorney, for Commonwealth.

*Arthur A. Maguire* and *Thomas F. Burke*, for defendants.

PINOLA, J., November 30, 1959.—Counsel for defendants, Louis Fabrizio and Robert L. Dougherty, have filed a motion to quash an indictment in which it is charged that they, on January 22, 1959, "with force and arms, in and upon one Daniel Stefanides . . . unlawfully did make an assault and him the said Daniel Stefanides then and there unlawfully did kill and slay contrary to the form of the Act of the General Assembly in such case made and provided, and against the peace and dignity of the Commonwealth of Pennsylvania."

Five reasons are assigned in support of the motion and they read as follows:

"1. That the said indictment does not set forth any offense denounced by any statute of the Commonwealth of Pennsylvania.

"2. That the said indictment violates Article I, Section 9, of the Constitution of the Commonwealth of Pennsylvania in that it does not set forth the nature and cause of the accusation against him. On the contrary, the indictment is vague, indefinite and uncertain in the allegations contained therein.

"3. That the indictment violates the Act of March 31, 1860, P. L. 427, Section 11 (19 P. S. 261), in that the indictment fails to charge the crime substantially in the language of the Act of Assembly prohibiting the crime, and prescribing the punishment.

"4. The indictment fails to set forth, with reasonable certainty, the facts so that the defendant cannot properly prepare his defense, and so that the defendant may be able to plead an acquittal or conviction to a second indictment for the same offense.

"5. The indictment is defective for misjoinder of parties."

In the first four, defendants complain about the lack of information contained in the indictment.

We would agree with them were it not for the fact that the indictment is drawn in compliance with the Act of April 28, 1871, P. L. 244, 19 PS §352, which provides:

"In any indictment for involuntary manslaughter it shall not be necessary to set forth the manner in which or the means by which the death of the deceased was caused, but it shall be sufficient in every indictment for involuntary manslaughter to charge that the defendant did unlawfully kill and slay the deceased."

While the section of The Penal Code of June 24, 1939, P.L. 872, 18 PS §4703, relating to involuntary manslaughter refers to a killing "happening in consequence of an unlawful act, or the doing of a lawful act in an unlawful way," involuntary manslaughter also includes any homicide which results from the omission to perform a legal duty: Commonwealth v.

Russin, 171 Pa. Superior Ct. 268, 40 C.J.S. 929 §63. In such case, the word "assault" is treated as surplusage. It is treated in its purely technical sense of an invasion of the rights of the deceased: Commonwealth v. Comber, 170 Pa. Superior Ct. 466.

Where the indictment charges that an offense has been committed and describes the same so plainly that its nature may be easily understood by a jury, it is sufficient, and the remedy is not by motion to quash but by rule for more specific bill of particulars to give defendant information necessary for the preparation of his defense: Commonwealth v. Hershman, 171 Pa. Superior Ct. 134.

We conclude there is no merit to the first four reasons.

For two reasons we could also dismiss the fifth: First, it comes too late, and second, no depositions were taken in support of it.

We note that initially defendants were jointly charged in the information and that they at no time made objection to it.

In Commonwealth v. McKeehan, 93 Pa. Superior Ct. 348, the court declared (351):

"If a single complaint had been made against the three [defendants], a single indictment would properly have followed the complaint and as the criminal charge grew out of the various transactions with which they were all connected, no prejudice resulted to the accused from the procedure adopted by the District Attorney and the court."

And where joint offenses were charged in the information, the court held in Franklin's Appeal, 163 Pa. 1, 10:

"The question of expediency was for the district attorney, not for the judge, to determine. The responsibility for a misjoinder would have been on him, and he was entitled to his own judgment on the subject. If

he carelessly or corruptly abused his discretion, there was plain and ample remedy by due course of law, but no allegation of such abuse could be maintained in face of the fact that the joint commission of the offence was a material and contested point at the trial."

Since a single information issued in this case without any objection thereto, it would seem that the present objection to the indictment comes too late.

Next, while an indictment may be quashed for matters dehors the record, required depositions were not taken to sustain the allegation of misjoinder: Franklin's Appeal, supra. Instead, defendants have gone to the bill of particulars and argue from its contents that they have been improperly joined with other defendants.

When filed, a bill of particulars does not become a part of the indictment. It cannot remedy by way of amendment a fatal defect in an indictment, and, similarly, an indictment good on its face is not rendered demurrable or subject to a motion to quash by matters contained in a bill of particulars: Commonwealth v. Hershman, supra.

A bill of particulars is no more than a pleading, the legal effect of which is to limit the proofs at the trial of the case. But it is amendable, with leave of court, up to the time of trial even to supply additional averments opening the door to proofs essential to a conviction.

Because of the serious nature of the crime charged and the importance of the case, we will nevertheless consider the alleged misjoinder.

Defendants urge that all the defendants are not subject to the same duties and can be separated into three catagories with reference to duties and relationship to the alleged crime. Messrs. Fabrizio, Dougherty and Lippi are the owners, Messrs. Renner and Fries are the engineering representatives of the lessor and Mes-

srs. Groves and Receski are the persons who were actually in charge of the mining. This seems to be the prime reason for the alleged misjoinder.

We must, therefore, consider the duties which devolved upon them.

At common law the owner was only bound to furnish a reasonably safe place in which his servants could work. In connection with hazardous employments, various States have passed laws to insure the safety of the employes. In Pennsylvania, the Act of June 2, 1891, P. L. 176, as amended, governs the mining of anthracite coal.

Under article XII, rule I, 52 PS §281, the owner, the operator, and superintendent of a mine are required to "use every precaution to insure the safety of the workmen in all cases."

This, we believe, places a greater burden upon the persons named.

In addition, under article III, sec. 1, 52 PS §261, the owner, the operator and the superintendent are required to deposit maps of the mines reflecting accurately the conditions therein, and they must, every six months, add extensions to the maps reflecting the mining during the preceding six months.

And, under rule 25 of article XII, 52 PS §296, any person or persons who shall knowingly or willfully do any act or thing whereby the lives or health of persons are endangered are declared guilty of an offense against the act.

In Article XVII, sec. 8, 52 PS §502, the law specifically makes the mine foreman, assistant mine foreman and any person placed in charge of the works, or any part thereof, the agent of the owners and operators.

The owners are under a duty to provide a safe place for their servants to work. This duty is as broad as the circumstances surrounding the work demand. As

it is the nondelegable duty of the owners to provide a ventilating system (Venzel v. Valley Camp Coal Co., 304 Pa. 583), so it would seem to be their duty to keep the roofs of all entries, gangways and other parts of the mine used in general by the miners in a safe condition.

It is also the duty of an employer to warn the employes of all the dangers to which they will be exposed in the course of their employment (Graszkowski v. White Brothers Smelting Corporation, 18 D. & C. 438), and the employer will be presumed to be familiar with the dangers, latent as well as patent, ordinarily accompanying the business in which he is engaged.

And finally, there is the social duty.

In Bisson v. John B. Kelly, Inc., 314 Pa. 99, Justice Maxey declared (page 110) :

"It is a primary social duty of every person to take thought and have a care lest his action result in injuries to others. This social duty the law recognizes and enforces, and for any injury resulting from any person's lack of elementary forethought, the law holds that person accountable. A normal human being is held to foresee those injuries which are the consequence of his acts of omission or commission which he, as a reasonable human being, should have foreseen."

Conceding that in order to charge defendants jointly, the action which is the basis of the charge must be joint, the district attorney contends that if we regard the purpose of the activities of all the defendants to be the mining of coal in compliance with the law, in the course of that mining there devolved upon each defendant a duty towards the deceased employe on the day of the accident, and the violations of those duties constitute joint action which warrants the joint indictment. With this, we agree.

The general rule as to the joinder of defendants, as laid down in works of good authority, is, that where

the same evidence, as to the act which constitutes the crime, applies to two or more, they may be jointly indicted: Commonwealth v. Elwell, 2 Metc. (Mass.) 190.

The law holds everyone who is so situated that his acts may endanger the life of another bound to exercise caution, and holds him responsible criminally for the loss of life consequent to his failure to exercise the proper degree of caution. If each of two persons jointly engage in the commission of acts which amounts to criminal negligence, and as a result of which a third person is killed, each may be found guilty of manslaughter even though it may be impossible to say whose act actually caused the death: 1 Wharton's Criminal Law and Procedure, sec. 290.

In Commonwealth v. Dudley, 46 Pa. Superior Ct. 337, 342, the court sustained a joint indictment of two persons, saying:

"The question brought before us, however, is not a new one, and has been passed upon by our Supreme Court in numerous cases. As early as Com. v. Gillespie, 7 Serg. & Rawle 469, it was held that, 'Several persons may be charged in the same indictment, for the same act, when the act admits of the agency of the several . . .' "

In Elliott v. the State, 26 Ala. 78, the court declared:

"If the offence arise out of the same act, though the parties stand in different relations, they may be joined. If several be engaged in the commission of the same offence, though each may act a different part in the commission of that offence, they may be joined. 1 Waterman's Archb. Cr. Pl. 96; Wharton's American Cr. Law 110."

In Rex v. Trafford (Court of King's Bench) 1 Barn. & Adol. 874, 887, where the indictment charged a public nuisance, Lord Tenterden, C. J., declared:

"By this verdict it appears that the several defendants whose case is submitted to the Court (some having been acquitted) have acted separately in raising the fenders and banks of their respective lands, but the grievance complained of is the result and effect of the acts of all jointly, and, therefore, there is no objection to an indictment including all."

According to the district attorney, the mining alleged to have been done under the supervision of Receski, the assistant mine foreman, and his superior, Superintendent Groves, would not have been done had not defendants Renner and Fries permitted it. If they allowed men to work in an unsafe place, at least these four were acting jointly on the day of the accident. Moreover, if it should appear at trial that the owners were negligent in the matter of instructions given by them to their subordinates, or that a manifestly dangerous situation prevailed for a long period of time, a jury might well find that the owners were grossly negligent in not taking measures to remedy it and thereby to protect the employes. In such case, they would likewise be contributing to the situation prevailing on the day of the accident, and all seven defendants could be found guilty of failing to provide a safe place in which the men could work.

In Commonwealth v. Inglis, 21 Lack. Jur. 21, an indictment was upheld which charged involuntary manslaughter against the two defendants, one of whom was vice president and manager of the coal mining department of the Lackawanna Railroad and the other his assistant. While the company had the right to remove all the coal, it was alleged that the work was performed in a careless and unlawful manner and that it was under the supervision of defendants.

In State v. Newberg, 129 Ore. 564, 569, 278 Pac. 568, the court held that each of two persons who

joined in shooting at an object which they supposed to be a deer but which proved to be a man, who was killed, may, if culpably negligent, be found guilty of manslaughter, though it may be impossible to say which fired the fatal shot. After an exhaustive review of cases, it declared:

"We deduce the rule from the above that, where the act of a defendant is of the required degree of culpability and it operates as an efficient proximate cause of the death, the defendant is guilty of the crime of involuntary manslaughter, even though someone else's negligence may have concurred."

Although defendants' counsel claim the decision was later overruled, the court in State v. Blackley, 191 Wash. 23, 26 70 P. 2d 799, answering the same argument as made here, declared (page 801):

"We do not think, however, that the authorities cited are susceptible to the restrictive construction suggested by respondents. In any event, we are certain that a much broader view is taken by a great majority of the courts. The rule is that where but one crime is charged in the indictment or information, all who participated in its consummation may be joined as defendants in the same information, even though their contributions to the result may be by different methods or acts. Elliott v. State, 26 Ala. 78; Fowler v. State, 3 Heisk (50 Tenn.) 154; Commonwealth v. Sloan, 4 Cush. (Mass.) 52; Commonwealth v. Roxana Tower, 8 Metc. (Mass.) 527; State v. Forcier, 65 N. H. 42, 17 A. 577; Volmer v. State, 34 Ark. 487; Ratliff v. Commonwealth, 182 Ky. 246, 206 S. W. 497; Fox v. Commonwealth, 202 Ky. 41, 258 S. W. 950; State v. McAninch, 172 Iowa 96, 154 N. W. 399, Ann. Cas. 1918A. 559; State v. Leeper, 199 Iowa 432, 200 N. W. 732."

As we see it, in our case, it was the joint duty of all defendants to mine coal strictly in accordance with

the anthracite mine safety law, and if their failure to observe the responsibilities under that law led to the single result, the death of Daniel Stefanides, we must hold the joint indictment to be proper.

Accordingly, we enter the following

*Order*

Now, November 30, 1959, at 9 a.m., the rules to show cause why the indictment should not be quashed are discharged.