# Commonwealth *v.* Dudley, Appellant.

*Criminal law—Indictment—Pleading.*

1. Two persons may be charged with a joint offense in the same indictment, and one of the two may be charged in other counts of the same indictment with separate offenses of a similar character to those charged to both persons in the indictment.

2. Where a person is indicted and the indictment contains several counts charging different offenses, one of which is conspiracy, the action of the court in admitting certain evidence relating to the conspiracy is not reversible error, although it may be so in fact where it appears that although there was a verdict of guilty upon the charge of conspiracy, the court did not sentence the defendant on this count.

*Liquor laws—Criminal law—Sale without license—Druggist—Physician's prescription.*

3. On the trial of an indictment against a physician and a druggist for selling liquor without a license and for conspiracy, where several witnesses testify that they bought liquors from the druggist on the prescription of the physician, and that the physician was not their family physician, and had not made any physical examination on which the prescription was based, the court cannot instruct the jury as a matter of law that the presumption is that the witnesses obtained the liquor and used it legitimately. In such a case it is for the jury to say for what purpose the prescriptions were given.

*Criminal law—Verdict—Form of verdict—Recording verdict.*

4. The verdict of a jury in a criminal case is that which is recorded as the verdict, and the form prepared in the jury room, though handed to the clerk, is no part of the record, and has no significance.

*Liquor laws—Selling without a license—Physician—Fraudulent prescriptions—Druggist.*

5. A druggist and a physician may be convicted of selling liquor without a license, where a large number of witnesses testify that they purchased the liquor from the druggist on prescriptions from the physician, who was not their family physician, and who made no physicial examination of them, and without inquiry as to the use to be made of the whisky; that a number of the witnesses were men of known intemperate habits; and that one of the witnesses secured one quart and two pints of whisky on a single day on three prescriptions.

Argued Oct. 10, 1910.    Appeal, No. 68, April T., 1911,
        VOL. XLVI—22

by defendant, from judgment of Q. S. Washington Co., May T., 1910, No. 142, on verdict of guilty in case of Commonwealth v. O. A. Yolton and E. G. Dudley. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Indictment for selling liquor without a license and for conspiracy. Before MCILVAINE, P. J.

The opinion of the Superior Court states the case.

At the trial when Linn Brookman was on the stand the following offer was made:

The commonwealth offers to prove by the witness on the stand that on one occasion he went to the drug store of E. G. Dudley, one of the defendants; he was there waited upon by a girl employed in the drug store who refused to sell him any liquor, told him that Dr. Yolton was not there; that subsequently a boy employed in this drug store came to the house of the witness and directed him to go back to the drug store; that he returned to the drug store, was informed by the girl there who had refused him liquor a short time before that she had had a telephone conversation with Dr. Yolton and that Dr. Yolton had told her it would be all right for to give the witness the whisky, if he left the money with her and left twenty-five cents for a prescription; that the witness left the twenty-five cents for the prescription and the money for the liquor, which he secured. For the purpose in connection with other evidence to be offered in the case of showing a conspiracy on the part of these two defendantas to violate the liquor laws.

The Court: Objection overruled and offer admitted and bill sealed for the defendants. [3].

The court charged in part as follows:

Now, that brings us to the acts that were done by these different parties, because there are two Mr. Dudleys and there are two Mr. Yoltons; there is "druggist" Dudley, and there is O. A. Yolton "the physician"; but O. A. Yolton is also an individual and E. G. Dudley is also an

individual; and the question is (when they did the acts here complained of) whether they were done in their capacity as druggist and physician, or whether they were done in their capacity as individuals, because a druggist does not lose his individuality, and neither does a physician lose his individuality simply because he happens to be a druggist or a physician, and he may do things as an individual that cannot be claimed were done as a physician. [4].

Defendants presented these points:

2. Where a witness goes on the stand and testifies that he obtained a prescription from Dr. Yolton and had the prescription filled at the drug store of Mr. Dudley, and there being no evidence to show for what purpose the liquor was obtained, or what use was made of it by the witness, the presumption is that he obtained the liquor and used it legitimately. *Answer:* This point is refused as the court is asked to say that " there being no evidence to show for what purpose the liquor was obtained or what use was made of it by the witness," this court cannot say under the testimony in this case, it is for the jury to say from the testimony for what purpose Yolton gave these prescriptions. [5].

4. Unless the jury find that a corrupt understanding existed between Dudley and Yolton, then the jury must acquit Dudley on the first three counts. *Answer:* Refused. This point could be affirmed as to the first count but it would be misleading to affirm it as drawn. [6].

*Errors assigned* were (1) refusal to quash the indictment; (2) refusal to quash the fourth count of the indictment; (3) ruling on evidence, quoting the bill of exceptions; (4–6) above instructions, quoting them; (7) in passing sentence on the verdict of the jury as to the second count of the indictment because the verdict of the jury as written does not find the indictments guilty on the second count; and (8) in entering judgment and passing sentence on the verdict of the jury.

*Owen C. Underwood,* with him *R. H. Melloy,* for appellant.

*C. L. V. Acheson,* district attorney, with him *T. H. W. Ferguson,* assistant district attorney, for appellee.

OPINION BY BEAVER, J., March 3, 1911:

The district attorney of Washington county, by leave of court, laid before the grand jury, then in session, an indictment containing five different counts. The first charged the defendants with a conspiracy to sell "vinous, spirituous, malt and brewed liquors, and admixtures thereof, to a person, and to divers persons then and there being, without first having obtained a license agreeably to law for that purpose, in violation," etc.

Second, charging both defendants jointly with having "sold and offered for sale vinous, spirituous, malt and brewed liquors and admixtures thereof, to a person and to divers persons then and there being, without having first obtained a license agreeably to law for that purpose, contrary to the form of the act of the general assembly," etc.

The third charged the defendants jointly with having furnished "by sale, gift and otherwise, spirituous, vinous, malt and brewed liquors, to a person and to divers persons then and there being, contrary to the form of the act of the general assembly," etc.

The fourth charged E. G. Dudley, one of the defendants, separately with selling certain intoxicating liquors to certain individuals therein named, "the said intoxicating liquors not being then and there sold upon the written prescription of a regularly registered physician, and not being sold for scientific, mechanical, or medicinal purposes, contrary to the form of the act of the general assembly," etc.

The fifth count charged one of the defendants, E. G. Dudley, with having sold to certain persons therein named spirituous, vinous, malt and brewed liquors "more

than once upon the same physician's prescription, contrary to the form of the act of the general assembly," etc.

Upon this indictment, the grand jury found a true bill as to the first, second, third and fourth counts, and not a true bill as to the fifth. The traverse jury found the defendants guilty upon the first and second counts of the indictment and not guilty upon the third and fourth counts.

The court, in sentencing the defendants, ordered "that a stet be entered upon the verdict of the jury, convicting the defendants of conspiracy, as charged in the first count of the indictment," and sentenced them severally upon the second count. From this judgment, E. G. Dudley, one of the defendants, appealed, no appeal having been taken by the other defendant, O. A. Yolton.

The action of the grand jury, the traverse jury and the court narrows the question for consideration, so far as practical effect is concerned, to the legality of the conviction of the defendants and the sentence of the court upon the second count of the indictment alone.

The evidence in the case discloses a condition of affairs which would hardly have been thought possible in the community in which it existed, except upon the practical admissions of both defendants. The witnesses of the commonwealth were, for the most part, not even cross-examined. There was no testimony as to their character for truth and veracity. The defendants were called as witnesses in their own behalf, but their testimony to a considerable extent corroborated that of the witnesses for the commonwealth and would have justified convictions of both defendants on the third count and Dudley on the fourth count of the indictment, if as to the question of time of sale the jury believed the witness of the commonwealth and not that of the defendant.

There was no direct evidence of conspiracy between the defendants to violate the law, but the manner in which the business was conducted justified the inference

of collusion and co-operation in such a way as to warrant the conviction on the first count, but the court below directed a stet upon the verdict of the jury as to the conviction upon the first count of the indictment, and there is, therefore, practically no ground for complaint on the part of the appellant, the sentence being based entirely upon the second count of the indictment, conviction upon which was, in our opinion, fully justified.

Both defendants moved to quash the indictment, on the ground that the first three counts charged them with a joint offense and the fourth and fifth counts charged Dudley, the appellant, with separate offenses, although of a similar character to those charged against both defendants jointly in the first three counts. The motion was overruled by the court, and the result would seem to have justified this action. There would probably be some force in the overruling of this motion, if the other defendant Yolton, who has not appealed, were making it, but, as made by the present appellant, it does not seem to us to have much weight. There is certainly no ground for appeal by the present appellant, because of prejudicial effect upon his rights by the joinder of these counts, for the reason that the grand jury ignored the fifth and the traverse jury acquitted him upon the fourth. Whilst we have said in several cases that the technicalities of pleading, even in criminal cases, are not insisted upon as in earlier days, we do not mean by that that a technicality which works apparent injury to a defendant ought not to be insisted upon, for whenever such an injury is apparent, this court will never hesitate to enforce technicalities, even when they seem to be of the most formal sort.

The question brought before us, however, is not a new one, and has been passed upon by our Supreme Court in numerous cases. As early as Com. v. Gillespie, 7 Serg. & Rawle, 469, it was held that, "Several persons may be charged in the same indictment, for the same act, when the act admits of the agency of several. So, also, several

persons may be charged in the same indictment, in different counts, for different offenses, though the court, in its discretion, might quash such indictment." In this case two persons were charged jointly with an offense, and each charged separately in the same indictment with a similar offense, and a conviction thereon was held to be good. In that case, even after verdict, the court said: "The verdict on the last count ought not to stand, but on the attorney general entering a nolle prosequi on that count, I can see no difficulty in entering judgment on the first count, as the verdict is separate."

So in Henwood & Arney v. Com., 52 Pa. 424, the Supreme Court went even farther and said, as set forth in the syllabi: "The rule against the joinder of felony and misdemeanor exists now, only when the offenses are repugnant in their nature and legal incidents and the trial and judgment so incongruous as to deprive the defendant of some legal advantage," and again: "The rule as to misjoinder rests on a technicality which will not stand in the way, when the interest of the defendant is not jeoparded;" also: "Sentence may be passed on any one count, and a misjoinder is thereby tolled. This exists where the discarded counts are good, as well as where they are defective, or the conviction is on a single count."

So in our own case of Com. v. Gouger, 21 Pa. Superior Ct. 217, it was held: "It cannot be objected in error, or on demurrer, or in arrest of judgment, that two or more offenses of the same nature on which the same or similar judgments may be given, are contained in different counts of the same indictment. An indictment will not be quashed for misjoinder of counts, where all of the distinct acts alleged in the different counts are charged to have been committed to influence the same election, and to accomplish a single result, namely, the election of the defendant to the office of county chairman."

The third assignment relates to the admission of the testimony of a witness who was informed by a clerk in the store of Dudley that she had received a communi-

cation from Dr. Yolton, which authorized her to make a sale to the witness of a certain amount of whisky, provided he paid for the prescription as well as for the whisky It is true, as argued by the appellant, that this tended to show the conspiracy charged in the first count of the indictment, that is, that Dr. Yolton communicated directly to the employees of Dudley instructions which influenced the sale to the witness, and it is also true that, under ordinary circumstances, the testimony would have been objectionable on the ground of being merely hearsay evidence. Whether or not this objection would be fairly met by the reply that the declaration was made by the clerk who made the sale as the agent of Dudley, by which he was bound, need not now be considered, first, for the reason that Dr. Yolton is not an appellant here, and he was the party most directly affected by what the clerk said, and, second, that no judgment having been entered upon the first count in the indictment for conspiracy, to which the testimony specially applied, as is conceded, Dudley, the appellant, is not injured thereby. For these reasons, the testimony becomes irrelevant in its practical bearing, in view of the judgment as it was finally entered, only upon the second count of the indictment, and, therefore, this assignment of error need not be seriously discussed.

The opinion of the court is elaborate and covers the entire case. We do not think the criticism of the appellant is quite fair, that, "The court throughout the whole charge seems to wish to instruct the jury that their duty is to take a fact on its face regular and legal, and draw a conclusion of guilt from that fact, if it is possible to do so, rather than draw a conclusion of innocence, if it is possible to do so. Consequently, the court from that viewpoint refused the second point submitted on behalf of the defendants." That point and the ruling thereon are as follows: '2. Where a witness goes on the stand and testifies that he obtained a prescription of Dr. Yolton and had the prescription filled at the drug store of Mr.

Dudley, and there being no evidence to show for what purpose the liquor was obtained, or what use was made of it by the witness, the presumption is that he obtained the liquor and used it legitimately.' " The answer was: " 'This point is refused, as the court is asked to say that, "there being no evidence to show for what purpose the liquor was obtained or what use was made of it by the witness," this court cannot say under the testimony in this case, it is for the jury to say from the testimony for what purpose Yolton gave these prescriptions.' " We think the refusal was entirely legitimate, in view of the testimony of every witness who was examined by the commonwealth, that Dr. Yolton was not his family physician and did not make any physical examination upon which the prescription was based. This was in itself evidence we think of a lack of sufficient care on the part of the prescribing physician to acquaint himself with the conditions which would justify his making the prescription. It was at least evidence of a lack of the care which should characterize such prescriptions.

The careful analysis and criticism of the appellant of the language of the court in regard to the duality of the defendants as men, and their position as physician and pharmacist respectively, is scarcely warranted. In our mind it savors less of the psychological disquisition than of the common sense discussion of the reasons for the power conferred by, and explanation of the terms used in, the sixteenth section of the Brooks Act of May 13, 1887, P. L. 108. Why is the extraordinary power mentioned in this section conferred upon a regularly registered physician? What is a prescription and what is involved therein? What is it to prescribe? These are legitimate questions, and it is important that the jury should understand the terms used. The court did no more than explain these important and to some extent technical terms in a plain, satisfactory way, using the definitions of a well-known and generally used dictionary or encyclopedia. There is nothing involved or misleading, or to

any extent mysterious, in this portion of the charge. It tends to clearness and a proper comprehension of the rights and duties of the defendants and is, in no sense, misleading or erroneous.

As to the answers of the court to other points, of which complaint is made, we think its criticism was entirely proper. They were general and not confined to the first count, the court saying as to at least two of the points: "This point could be affirmed as to the first count, but it would be misleading to affirm it as drawn," that is, that it was inapplicable to the other counts which did not involve the charge of conspiracy.

We quite agree with the appellant as to the seventh assignment being "very technical." The verdict was, as the jury returned it: "1. Find them guilty of conspiracy. 2. Selling liquor without license, and not guilty on the third and fourth counts of the indictments." No other sane conclusion could have been drawn from the second finding, except that it was, so far as selling liquor was concerned, the same as the first, and this is emphasized by their finding "not guilty" on the third and fourth counts of the indictment. Inasmuch as that left only the second count and inasmuch as it was for selling liquor without license, no other conclusion could be drawn from it.

The conclusive answer, however, to this assignment of error is that the verdict, as quoted therein by the appellant, is not the verdict of the jury. The verdict, as contained in the record, is: "Guilty of conspiracy and selling liquor without license, and not guilty on the third and fourth counts of the indictment." Where in the record the appellant found what he quotes as the verdict does not appear. From the wording of the assignment, however, it would seem as if he claims that what is the verdict as quoted was what was written by the jury, but that is not the verdict as recorded, and, under all the authorities, the verdict as recorded is to be taken as the real verdict in the case and not the memorandum which was presented by the jury. The appellant has not in-

formed us where he secures what he calls the verdict and, inasmuch as it cannot be found in the record, so far as it is printed, we cannot consider the assignment of error which is founded thereupon. This clearly appears from Com. v. Breyessee, 160 Pa. 451: "The verdict as recorded is the verdict of the jury, and the form prepared in the jury room, though handed to the clerk, is no part of the record, and has no significance." See also Com. v. George, 12 Pa. Superior Ct. 1, and Com. v. Flaherty, 25 Pa. Superior Ct. 490. In the latter it is held: "Where a verdict irregularly formed is moulded into proper form by the trial judge and duly recorded by the clerk before the jury are finally discharged, the form prepared in the jury room or handed in the first instance to the clerk, has no significance whatever, and is no part of the record." Whether or not the form of the verdict used by the appellant for the preparation of the seventh assignment of error was presented by the jury does not appear; the verdict as entered by the court is found in the docket entries as printed by the appellant as part of the record, and upon that we must rely. The seventh assignment, therefore, is not to be farther considered.

The eighth assignment of error practically raises the entire question at issue. It is: "The court erred in entering judgment and passing sentence on the verdict of the jury," and, as the appellant says in his argument, "leads us to a consideration of the question of whether or not this evidence was such that the court was justified in passing sentence on the verdict." Both the assigment itself and this remark in regard to it are scarcely correct. The court did not sentence upon the verdict, but ordered a stet as to the conviction on the first count and sentenced only on the second count. That the conviction upon the second count, upon which the defendants were sentenced, was abundantly justified is apparent from a very slight consideration of the evidence. Thirteen different individuals testified unequivocally that they had secured prescriptions for whisky from the defend-

ant, Dr. Yolton. He was not the family physician of any
one of them and, therefore, not acquainted with any
malady or disease from which they may have been suf-
fering. He made no examination of them, so as to as-
certain what their physical disease, if any, might be.
The patients seem to have prescribed for themselves.
Their request was not for a remedy for a disease but for
a prescription for a particular thing which they seemed
to think they needed. It is scarcely conceivable that, if
any one of them had gone to Dr. Yolton for an ounce of
morphine or ten grains of arsenic, that he would have
given them the prescription without a careful examination
as to whether or not their physical condition required
these remedies, and detailed directions as to how they
were to be taken. Nothing of that kind occurred, so far
as the testimony shows, with perhaps a single exception,
of which the doctor speaks in his testimony. Every
one of these witnesses secured a filling of the prescrip-
tion at the drug store of the other defendant, Dudley.
No inquiry seems to have been made there as to the use
to be made of the whisky, although in many instances
it was a full quart or a pint, and never less apparently
than half a pint. A policeman of the town testified that
eight of these thirteen witnesses were men of known in-
temperate habits. In a single instance, mentioned by
the physician, and a like exception by the pharmacist,
one individual was ordered out of the office of the former
and away from the premises of the latter. This testi-
mony was, of course, for the jury. If the testimony of the
witnesses for the commonwealth was to be believed, a
conviction of the violation of the Brooks law in almost
every particular would have been justified, if the indict-
ment had contained counts covering every infraction of
the law. If the evidence of Brookman was believed, al-
though it was denied by both of the defendants, he se-
cured three prescriptions and had them all filled on a
single day, the first one being for a quart and the others
for a pint each; and this, it seems to us, would have in-

dicated an utter disregard of the responsibilities placed upon both the regularly registered physician who gave the prescriptions and the pharmacist who filled them. This would have been, it seems to us, an unmistakable indication which ought not to be disregarded that the person for whom the physician prescribed was not only misusing the prescription but that for which it called and was, in all probability, ministering to the appetites of others as well as his own. The testimony was simply overwhelming, and the force of it was not in any degree broken by that of the defendants themselves, who, in their admissions of what was done in office and store, revealed a condition of affairs from which alone the jury might have found them guilty, although the effort was made to fix the specific instances of prescription and sale more than two years prior to the time of the indictment. Independently of the testimony of Brookman in regard to having been refused a request for whisky by the clerk of Dudley and his being sent for subsequently and informed that she was directed by Dr. Yolton to furnish it, if he left the price of the whisky and of the prescription, we think there was abundant evidence to convict both defendants of the second count upon which they were sentenced, and we cannot see that this testimony had any unfavorable or injurious effect upon the jury, unless it be as to the first count in the indictment for conspiracy, and as has already been said the defendants were not sentenced upon that count.

Indeed as to the question of conspiracy, the trial judge, it seems to us, went to the utmost limit in the defendants' favor, when he said: "If the testimony satisfies you beyond a reasonable doubt that the charge here is true, why then you could convict the defendants of conspiracy; otherwise, if you have any doubt, you should give them the benefit of the doubt and acquit them of conspiracy." This, we take it, is more than the careful counsel for both defendants would have asked, and more than the court intended, assuming as we do that the intention of the

court was to apply "reasonable" to any doubt of which the jury should give the defendants the benefit, in order to acquit.

The case was well tried, the defendants were zealously, laboriously and ably defended, and the appellant has had the benefit of a thorough and complete presentation of his case here. If the other defendant had appealed, the case, as to some of its aspects, might have been made somewhat stronger; but, on the whole, we cannot see that the defendants, or either of them, were injured in any way by the rulings of the court on the admission of evidence, or in the general discussion of the case to the jury.

Taking the case, therefore, in its entirety, we are quite convinced that the defendants were properly convicted.

Judgment affirmed and the record remitted to the court below, to the intent that its sentence may be fully carried into effect.