# Commonwealth *v.* Holgate, Appellant.

*Criminal law—Larceny—Receiving stolen goods — Evidence — Search warrant — Presumption of innocence — Reasonable doubt— Corroboration of defendant.*

On the trial of an indictment for receiving stolen goods the fact that the defendant and his witnesses deny that the defendant received the stolen property will not entitle the defendant to assert that he was not guilty of the crime charged, where his guilt might be inferred from his possession of the property and his failure to give a satisfactory account of the manner in which, consistent with his innocence, he obtained it. The jury is not bound to believe an incredible story because no witnesses contradicted it.

On the trial of an indictment for receiving stolen goods, where a constable enters upon the defendant's premises with a search warrant, and finds the stolen goods in a barn over which the defendant had control and which he used for his own purposes, evidence as to the legality of the search warrant, and the right of the constable to enter the premises is immaterial, and especially so where it appears that the warrant was read to defendant and he said it was all right, but when he afterwards asked to read it and was refused, said he did not care where the constable went.

On the trial of such an indictment where there is evidence that the defendant's actions were not frank, open and fair, the trial judge cannot be convicted of error because he said to the jury that the Commonwealth claims that the defendant's actions were not "frank, open and fair, which would indicate guilt on his part."

On the trial of an indictment for larceny and receiving stolen goods, where the court inadvertently instructs the jury that they could return a verdict of guilty on both counts, and the jury returned such a verdict, but the court subsequently arrests the judgment on the count charging receiving, and sentences the defendant for larceny, the defendant cannot demand a reversal of the judgment because of the inadvertent instructions.

When a charge in a criminal case is just to the prisoner and the points fully answered, the court will not, as a general rule, be convicted of error for not having instructed on a point which was not presented.

The mere omission to charge as to the presumption of innocence in the absence of a request so to do is not reversible error, where the court gives proper instructions on the question of reasonable doubt.

A trial judge cannot be convicted of error in failing to allude in his charge to the corroboration of the defendant by a witness, if it appears that he was not requested to do so.

Argued March 8, 1916.   Appeal, No. 301, Oct. T., 1915, by defendant, from judgment of Q. S. Lackawanna Co., April Sessions, 1915, No. 281, on verdict of guilty in case of Commonwealth v. Lynn Holgate.   Before ORLADY, P. J., HENDERSON, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Indictment for larceny and receiving stolen goods. Before BARBER, P. J., specially presiding.

From the record it appeared that the defendant was charged in the first count of the indictment with the larceny of a certain buggy, the property of Catherine Bauer, and in the second count with feloniously receiving the same goods, knowing them to have been stolen.

The court charged as follows:

The evidence showed that some unidentified person was seen on Saturday, February 6, 1915, about one a. m.

taking a buggy, corresponding in a general way with the one described in the indictment, attached to another vehicle in front, along a driveway, near the shed in which Mrs. Bauer kept her buggy, and the hotel where she was staying.

Two days later on February 8th, a search warrant was issued and placed in the hands of a constable, who, accompanied by Mr. Bauer, the husband of the prosecutrix, and a third party, went to the farm where defendant resided with his parents, several miles distant from the shed from which the buggy had been removed. When the search warrant was produced and read, defendant denied any knowledge of the stolen goods, but remained near while the barn near the residence was searched. Not finding the missing buggy, the constable inquired about another barn on the farm some distance away, to which defendant replied, he did not own the other barn and declined to go with the constable to it. It subsequently appeared that defendant kept other vehicles belonging to himself in this barn and had daily access to it. The constable and those who were with him went to the other barn and there found a buggy, which was identified as belonging to Mrs. Bauer, took possession of the same and removed it. When the searching party returned to the family residence the defendant had disappeared, and at the trial testified "he was out getting bail."

Defendant denied any knowledge of the larceny of Mrs. Bauer's buggy, and said he obtained possession of the buggy found by the constable in the barn in a trade had on Sunday morning, February 7th, with a man named "Red," giving him another buggy and set of harness in exchange.

[The defendant does not deny that he received a carriage corresponding substantially with the carriage described by the prosecutrix on Sunday morning, and that he traded for it, which would be receiving;] (1) and the carriage of course is an article of personal property which is made larceny under the laws of the Common-

wealth; but the essence of this evidence is "knowing the
same to be stolen or feloniously taken." [In order to
convict a person of the crime of receiving stolen goods,
they must buy or receive them knowing them to be stolen,
and this is an essential element like everything else the
Commonwealth must establish to your satisfaction be-
yond a reasonable doubt that this defendant knew that
this article which he secured in the manner he has de-
tailed, had been stolen. Now, of course, that is a matter
of inference. You have a right to consider the circum-
stances. We don't always have direct evidence of crime;
circumstantial evidence is legal evidence, and the Com-
monwealth doesn't ask for a conviction except upon legal
evidence, therefore the Commonwealth asks you consider
the circumstances under which he alleges he acquired
possession of this buggy. The Commonwealth on its
part has not offered any evidence as showing how he ac-
quired this possession, but they rely for conviction under
this count, upon the circumstances under which he ac-
quired possession of this buggy on that morning, as he
details them to you. When a man knows a thing has
been stolen, or if the character of the man is such, who
comes to him with an article, as to put him on inquiry—
if he knows him to be a thief, or if the circumstances lead
him to believe that the man has stolen the article, then
he should be very careful about dealing with such a char-
acter, because of the imputation which may arise under
the circumstances that he knew it to be stolen.] (2)
But this is a fact which must be established, like every
other fact in a criminal case, beyond reasonable doubt.

I shall not detail or go over the evidence; it has been
very fully commented upon by the counsel for the Com-
monwealth and by counsel for the defendant, and there-
fore it is not necessary. [The Commonwealth relies
upon the fact, as they attempted to establish it, that it
was taken away, and as I said probably you will have
little difficulty in arriving at that conclusion; then they
ask you to find that this defendant is guilty of taking

(See top of page 21, infra,) there. They claim that the defendant did not act, and was not fair, frank and open with the officer of the law when he came there. In this case you must assume that he was there properly. When an officer comes with a paper purporting to be a search warrant, we must assume in this proceeding at least whatever may have been the truth of the matter, that he was there properly; and he came there with a search warrant he says to search these premises.] (3) I shall not rehearse the conversation between the constable and these parties. [The Commonwealth claims that the defendant, in relation to this property and the offense charged, when the constable went to search and find out whether he had the article for which they had the warrant to search, was not frank, open and fair, which would indicate guilt on his part; that he did not disclose the fact that this article for which they were searching was down in another barn, and that he did nothing to help them make the search in the other locality. Now that is a circumstance for your consideration in coming to a conclusion as to whether he is guilty, or not guilty, because you must consider all of the circumstances.] (4)

On the part of the defendant, the defendant goes upon the stand, and he is a competent witness. His credibility, of course, as all others, is for you. He goes on the stand and he denies having taken that carriage. You have heard his story of where he was on Friday afternoon, at the different places around there; where he stopped on his way home; the time he got home, and what he did after he got home, and what his parents did for him. He says then he went to bed, and that he didn't get up until the next morning at 9 o'clock. Now, gentlemen, if that is true, then he could not possibly have taken the carriage, because the Commonwealth's only testimony in relation to the taking is that it was about midnight or at 1 o'clock in the morning when this carriage was removed. If you believe the story of the de-

fendant that he was in bed all that night—and I might say now that he is corroborated by his mother who' says that she waited on him, then of course, you could not find him guilty. You have also heard the story of the mother, what she did for him, how she waited upon him during the evening, and she says that he could not have gotten out of the house that night without her knowing it; that she waited on him until 10 or 11 o'clock when he went to sleep, and that he did not get up until the next morning; as bearing upon the improbability of his leaving and going out and driving to the Sickler Hotel and removing that carriage. As to the receiving of the stolen goods, the defendant details to you how he acquired possession, to contradict the inference to be drawn from the fact, which you will probably have no difficulty in finding, that it was found in this barn. I don't understand that the defendant denies that this carriage was there, but he details to you how he acquired possession of it, and you have heard his story of how those two men came there on Sunday morning, and the deal or trade he made, and that he acquired possession of it in that way; and he asks you to say that he could not be guilty of receiving stolen goods, because he traded it and gave another buggy and some harness in trade for it, as rebutting any presumption or inference that might be drawn of his knowing it to be stolen. The credibility, of course, of all the witnesses is for you. [Where parties give contradictory stories, you must endeavor in the first instance always to try to reconcile their testimony, assuming that all mean to tell the truth; if you cannot do so, then you must determine whom you will believe, and whose evidence is to be accepted as verity.] (5)

["If you should convict the defendant in any event you have nothing to say about the costs; you simply say 'Guilty' or 'Not Guilty' as he stands charged; except that you may find him guilty of the first count, that is of the taking and carrying away of the goods, and not guilty of receiving, under the second count; or you may

find him 'not guilty' of the first count, that is the taking and carrying away of the goods, and find him 'guilty of receiving stolen goods knowing them to have been stolen.' You can convict on both, or acquit on both, or you can convict on one and acquit on the other, and you will so state in your verdict."] (6)

Verdict of guilty upon which judgment of sentence was passed. Defendant appealed.

*Errors assigned,* among others, were (1-6) above instructions quoting them; (8-9) refusal of binding instructions for defendant on both counts; (10-13) various rulings on evidence.

*Joseph O'Brien* and *R. H. Holgate,* with them *Leon M. Levy,* for appellant.—In order to establish the crime of receiving stolen goods a separate and distinct state of facts must be proven other than those which would justify a conviction upon the charge of larceny alone: Owen v. The State, 52 Ind. 379; In re Franklin, 77 Michigan 615; The State v. Smith, 37 Missouri 58; The State v. Ives, 13 Ired (N. C.) 338; Reg. v. Coggins, 12 Cox, C. C. 517; Com. v. O'Neill, 10 Dist. Rep. 227; State of New York v. Brian, 53 Hun. (N. Y.) 496; Tobin v. People of the State of Ill., 104 Ill. 565; Com. v. Goldberg, 4 Pa. Superior Ct. 142.

*George W. Maxey,* District Attorney, with him *John J. Owens,* Assistant District Attorney, for appellee.— The evidence in this case was sufficient to sustain the conviction: Com. v. Frew, 3 Pa. C. C. R. 492.

The verdict of the jury, finding the defendant guilty on both counts, did the defendant no substantial harm, particularly in view of the fact that the court arrested judgment on the receiving count and sentenced the defendant only on the count charging the larceny. This being the fact, the defendant cannot now contend that his conviction on both counts was reversible error: Com. v.

Miller, 6 Pa. Superior 35; Smith v. Com., 14 S. & R. 68; Com. v. Goldberg, 4 Pa. Superior 142; Henwood v. Com., 52 Pa. 424; Hazen v. Com., 23 Pa. 355; State v. Setter, 57 Conn. 461; Hartman v. Com., 12 S. & R. 68; Queen v. Campbell, 8 Quebec King's Bench 322.

It was not error for the court to have failed to charge as to the presumption of innocence, having fully stated the doctrine as to the Commonwealth's duty to prove the defendant guilty beyond a reasonable doubt: People v. Graney, 91 Mich. 646; Zell v. Com., 94 Pa. 258; Com. v. Winkleman, 12 Pa. Superior Ct. 497; Cathcart v. Com., 37 Pa. 108; Moorehead v. State, 34 Ohio 212; Ogletree v. State, 28 Ala. 693.

OPINION BY TREXLER, J., May 9, 1916:

The defendant was indicted for larceny and receiving. A verdict of guilty was rendered on both counts. Under the proof submitted there was sufficient to warrant a conviction on either depending upon the view the jury took of the evidence.

There are seventeen assignments of error. We will consider them as grouped by counsel in their argument.

First: The contention of the appellant that no knowledge of the felonious taking on the part of the defendant was affirmatively shown, hardly merits consideration. It is true that the testimony of the defendant and his witnesses as to his receipt of the stolen property was unshaken and uncontradicted, but its credibility was nevertheless for the jury. That testimony may be uncontradicted does not imply necessarily that it is true. It was for the jury to decide whether they should believe the story given by the defendant. Taking all the facts, the guilt of the accused might be inferred from the circumstances, e. g., from the possession of the property after the theft and his not giving a satisfactory account of the manner in which, consistent with his innocence, he obtained it. If he gives an account, the jury must decide upon its credibility: Com. v. Berney, 28 Pa. Su-

perior Ct. 61; Rosenberger v. Com., 118 Pa. 77; Com. v. Ault, 10 Pa. Superior Ct. 651; Wharton's Criminal Evidence, Vol. II, p. 1509, 10th Ed. They are not bound to believe an incredible story because no witness contradicts it: Shultz v. Wall, 134 Pa. 262.

Second: The question whether the person who had the search warrant was properly authorized to enter the premises where the property was found, was vigorously argued by appellant and it is urged that the court erred in saying, "That when an officer comes with a paper purporting to be a search warrant, we must assume in this proceeding, at least, whatever may be the truth in the matter, he was there properly and that he came there with a search warrant to search these premises." We may accede to the proposition that when one claims the right to enter another's dwelling in search of property, he may be required to exhibit his warrant for so doing and such exhibition ordinarily should go so far as to allow the occupant of the premises under proper safeguards to see the paper. We are not however in this case trying the right of the defendant to see the warrant, nor the legality of the constable's entering upon the premises. The fact remains that the stolen article was found in the barn of the defendant, in a place over which he exercised control, and which he used for his own purposes, and that when the warrant was read, defendant said it was all right, but afterwards asked to read it, and when refused said he did not care where the constable having the warrant went. What occurred was evidence irrespective of the legality of the search warrant and the collateral issue as to the right of the constable to enter the premises threw no light on the question trying. The instruction of the court that the jury might consider that the constable proceeded properly was merely excluding from their consideration something that should not enter into the decision of the case. Had anyone without a warrant come to defendant's premises in search of the stolen

property, the latter's acts and declarations would have been proper evidence if offered by the Commonwealth.

Third: The statement of the court that the Commonwealth claims that the defendant's actions were not "frank, open and fair, which would indicate guilt on his part," did not assume that this conclusion was necessarily to be drawn but that this was what the Commonwealth asked the jury to do. The Commonwealth had a right to argue this under the evidence that was produced and a reference to it by the court was entirely proper.

Fourth: The jury found the defendant guilty of larceny and receiving. He could not be guilty of both. The court had inadvertently instructed them that they could return a verdict of guilty on both counts. The court, however, arrested the judgment on the count charging receiving and sentenced the defendant for larceny. Had defendant been sentenced on both counts, he would undoubtedly have just grounds for complaint. He was convicted and sentenced on but one count. Conviction in its legal and technical meaning is not complete until sentence is passed: Smith v. Com., 14 S. & R. 69; County of Cumberland v. Holcomb, 36 Pa. 349; Com. v. Minnich, 250 Pa. 363. There is no difference in effect between a general verdict of guilty and a verdict, of guilty on all counts. If one count sustains the verdict, sentence may be imposed upon that: Com. v. Stern, 58 Pa. Superior Ct. 591 (603); Henwood v. Com., 52 Pa. 424; Com. v. Dudley, 46 Pa. Superior Ct. 337; Stahl's App., 1 Pa. Superior Ct. 496; Com. v. Goldberg, 4 Pa. Superior Ct. 142; Com. v. Prickett, 132 Pa. 371; Hazen v. Com., 23 Pa. 355.

Fifth: The court failed to charge as to the presumption of innocence but did instruct as to reasonable doubt. The defendant's counsel did not call the attention of the court to the omission. When the charge is just to the prisoner and the points fully answered the court will not as a general rule be convicted of error for not having instructed on a point which was not presented: Zell v.

Com., 94 Pa. 258; Com. v. Winkelman, 12 Pa. Superior Ct. 497; Cathcart v. Com., 37 Pa. 108; McMeen v. Com., 114 Pa. 300; Com. v. Caraffa, 222 Pa. 297; Com. v. Pacito, 229 Pa. 328; Com. v. Duffy, 49 Pa. Superior Ct. 344; Com. v. Zappe, 153 Pa. 498; Com. v. Morrison, 193 Pa. 613.

The defendant is entitled to instruction that if a reasonable doubt exists it must resolve itself in his acquittal: Com. v. Duffy, supra; Com. v. Devine, 18 Pa. Superior Ct. 431; Com. v. Deitrick, 221 Pa. 7; Com. v. Hoskins, 60 Pa. Superior Ct. 230; Com. v. Andrews, 234 Pa. 597.

Is the mere omission to charge as to the presumption of innocence in the absence of a request so to do, reversible error? Was the court in addition to the instructions as to reasonable doubt required to instruct as to the presumption of innocence? At the argument at bar, the defendant relied on the case of Coffin v. U. S. 156 U. S. 432. There it was held that reasonable doubt is the result of proof, not the proof itself whereas the presumption of innocence is one of the instruments of proof going to bring about the proof from which reasonable doubt arises. The one is the cause, the other the effect, and that one is not the equivalent of the other and that a failure to instruct in regard to presumption of innocence excluded from their minds a portion of the proof created by law. The above statement has been severely criticised by both Wigmore and Chamberlayne, and what is claimed to be its fallacy exposed in detail in Thayer's Preliminary Treatise on Evidence, Appendix B, p. 551. The conclusion reached by the Supreme Court has not been followed in a number of states, and in Agnew v. U. S., 165 U. S. 36, it is stated that the declaration in the Coffin case that legal presumptions are treated as evidence has a tendency to mislead. The whole question of the presumption of innocence is at length discussed in Chamberlayne on Evidence. We quote from Sec. 1174, "All that is properly contained in the expression "pre-

sumption of innocence" may be restated with a sufficient approximation to exactness in stating that in a criminal case it is the duty of the government to prove every material allegation set forth in the indictment against the prisoner beyond a' reasonable doubt." Wigmore on Evidence, Sec. 2511, is to the same effect. The "presumption of innocence" is in truth merely another form of expression for a part of the accepted rule for the burden of proof in criminal cases, i. e., the rule that it is for the prosecution to adduce evidence and to produce persuasion beyond a reasonable doubt." It follows, if this be correct, that proper instructions as to reasonable doubt, accord to the defendant all that he is entitled to in regard to the subject of presumption of innocence, and that if the latter be referred to, it is merely in amplification or further explanation of the former, and is not to be regarded as a "portion of the proof created by law," in regard to which failure to instruct is error. We are convinced that the weight of authority is against the appellant's contention, and that the court did not err in not charging as to the presumption of innocence when he had already charged as to reasonable doubt, and that if defendant desired instructions on this particular phase of the subject, he should have requested the court so to do.

Sixth: The trial judge failed to allude to the corroboration of the defendant by a witness. He referred to the testimony of the defendant in which he received the wagon, and if the defendant wished further reference to this branch of the defense, he should have asked for it. Both sides of the case were fairly presented and the failure to comment on the testimony of one witness which, as to some facts, corroborated the testimony of the defendant, was not reversible error. Even in a capital case, where the trial judge misquotes testimony of a witness, his attention should be called to it, otherwise it is not the proper subject of complaint on appeal: Com. v. Razmus, 210 Pa. 609. We feel sure in the case at bar

that in no part of the charge was any injustice done to the defendant.

We have considered all the questions in the case which require attention and conclude that the learned trial judge did not commit error.

The assignments of error are overruled.    The judgment is affirmed, and it is ordered that the defendant, appellant, appear in the court below at such time as he may be there called, and that he be by the court committed until he has complied with the sentence or any part of it that had not been performed at the time this appeal was made a supersedeas.