# Commonwealth *v.* Dailey, Appellant.

*Criminal law—Physicians—Osteopaths—Right to practice medicine—Act of March 19, 1909, P. L. 46—Act of June 11, 1911, P. L. 639.*

An osteopathic physician duly licensed by the Osteopathic Board of the Commonwealth of Pennsylvania, is not entitled under the law to engage in the general practice of medicine.

Osteopaths are empowered to diagnose and treat diseases according to the principles of osteopathy.   Their privileges are not affected by the acts of assembly relating to the practice of medicine; but the right to practice medicine is not conferred upon those licensed under the Act of March 19, 1909, P. L. 46, and its supplements, relating to osteopathy.   The fact that materia medica, therapeutics and other branches taught in medical schools are also imparted at the osteopathic colleges cannot extend the right of osteopaths to practice medicine.

*Evidence—Charge of court—Sufficiency.*

In a prosecution for practicing medicine without a license, instructions to the jury that if they were convinced beyond reasonable doubt that the defendant practiced medicine, and did not treat patients in accordance with the practice of osteopathy, they would be justified in convicting him, are without error.

Argued October 15, 1920. Appeal, No. 83, Oct. T., 1920, by defendant, from the judgment and sentence of Q. S. Phila. Co., July Sessions, 1919, No. 417, on verdict of guilty in the case of Commonwealth of Pennsylvania v. Philip S. Dailey. Before PORTER, HENDERSON, TREXLER KELLER and LINN, JJ. Affirmed.

Indictment for practicing medicine without a certificate issued by the Bureau of Medical Education and Licensure,. and without having been registered under the Act of June 11, 1911, P. L. 639. Before MARTIN, J.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty on which judgment of sentence was passed. Defendant appealed.

*Errors assigned* were various rulings on evidence, the charge of the court and refusal to direct a verdict for the defendant.

*William A. Gray,* and with him *J. Wesley McWilliams,* for appellant.—The practice of osteopathy is the practice of medicine. The teaching of osteopathy includes the use of drugs.

Section 12 of the Act of March 19, 1909, P. L. 46, expressly recognizes osteopaths as physicians, practicing medicine: Com. v. Seibert, 262 Pa. 345.

*John H. Maurer,* Assistant District Attorney, and with him *Samuel P. Rotan,* District Attorney, for the appellee, cited: Com. v. Byrd, 64 Pa. Superior Ct. 108; 30 Cyc. 1546; State v. Bonham, 93 Washington 489; 161 Pac. Rep. 377; Com. v. Holgate, 63 Pa. Superior Ct. 246, 254.

OPINION BY TREXLER, J., March 5, 1921:

The question presented by the appellant is, "whether an osteopathic physician duly licensed by the Oste

opathic Board of the Commonwealth of Pennsylvania is entitled under the law to engage in the general practice of medicine?" The defendant was licensed under the Act of March 19, 1909, P. L. 46, and that license authorized "The holder thereof to practice osteopathy as taught and practiced in the legally incorporated, reputable colleges of osteopathy as provided for in this act." It is admitted that there was no license issued to the defendant under the Act of June 11, 1911, P. L. 639, which license entitles one to practice medicine and surgery, and it is further admitted that the defendant prescribed drugs for the use of his patients. It was under the later act that the defendant was prosecuted and found guilty as indicated, of unlawfully engaging in the practice of medicine and surgery and holding himself forth as a practitioner in medicine and surgery and assuming the title of doctor to diagnose and treat diseases by medicine and surgery, without first having received a certificate of licensure from the Bureau of Medical Education and Licensure of said Commonwealth and without having such license properly recorded.

The court charged in part as follows: "The defendant comes before you with the presumption of innocence. Unless you are convinced beyond a reasonable doubt that he practiced medicine, held himself out as a physician, investigated the causes of the diseases of patients, and prescribed for their care, drugs or medicines as commonly done by physicians, he must be acquitted; if you are convinced beyond a reasonable doubt that he practiced medicine and did not treat patients whose testimony you have heard, in accordance with the practice of osteopathy, you will be justified in convicting him." This would seem to give the defendant every right that he was entitled to. It left the criterion of his right to practice the subjects taught and practiced in colleges of osteopathy and the jury having found against him, unless some other error appeared in the trial the judgment must be affirmed.

510, (1921).]          Opinion of the Court.

The first assignment is directed to the sustaining of an objection urged by the Commonwealth to prove what the College of Osteopathy of Philadelphia teaches at the present time, the trial court taking the position that the standards existing at the time of the passage of the act were the only ones that could be considered. It is admitted in the argument that this question is hardly material because there is evidence upon the record showing not only what is now taught in said college, but what was taught in 1909. We do not wish to be understood as expressing the view that the court was wrong in the attitude it took but it is not necessary for present purposes to decide the question: see Com. v. Sweeney, 61 Pa. Superior Ct. 367.

The second and third assignments were abandoned at the argument.

The only remaining assignment is, that the court erred in not directing a verdict for the defendant. The only support for this would be that since all the doctors called testified that osteopathy as taught and practiced includes the administration of drugs, the jury should have been instructed to acquit the defendant. The jury was not bound to believe the statements of these gentlemen. As is pointed out by the court in its opinion on the motion for a new trial, "The testimony of the witnesses called for the defense was evasive, and they exhibited reluctance to commit themselves to recognition of drug administration as part of the theory and the practice of osteopathy. The limit to which they were willing to go was the assertion that toxicology, materia medica, and therapeutics, and the subjects taught in medical schools were also taught at the osteopathy college; and that in practice drugs were at times administered in conjunction with osteopathic treatment." It therefore remained for the jury to decide whether their narratives were truthful, and if they disregarded them, there is no reason to set aside their action: Com. v. Holgate, 63 Pa. Superior Ct. 246.

We have thus far considered the case as presented on the assignments of error. To recur to the statement of the question involved above quoted; it is apparent that there is a common purpose in all the acts of assembly requiring a license before engaging in certain callings and that is to protect the public from incompetent persons who are not qualified to do what they profess themselves able to do. The proficiency of the applicant to practice medicine is tested by an examination. Under the Act of 1909, supra, the applicant is examined upon various subjects in order to determine whether he is competent to practice as an osteopath. There is the clear distinction drawn in the various acts, between the practice of medicine, and the practice of osteopathy. If both acts were intended to cover the same ground and the osteopath had the right to practice medicine generally there would be no reason for the existence of the two acts.

When the Act of 1909 provided that the license issued under its provisions shall authorize the holder to practice osteopathy as taught in colleges, we must not lose sight of the fact that the thing to be taught is "osteopathy." There is a clear indication that the legislature did not intend osteopaths to administer medicine for in the subjects enumerated for examination, materia medica, and therapeutics are not included. It might be possible if the defendant's theory be correct, that an osteopath could receive a state license and administer drugs for the cure of diseases without ever having had any instruction in these particular branches, or any test of his knowledge of the same. The subject of the act is osteopathy. The title to be used by licensees is distinct from the title accorded one who is licensed generally to practice medicine. As was said by the learned trial judge in the opinion which we have already in part quoted, "Osteopaths are empowered to diagnose and treat diseases by employing osteopathy. Their privileges are not affected by the acts relating to the practice of

medicine; but the right to practice medicine is not conferred upon those licensed under the Act of 1909, and its supplements, relating to osteopathy; and the fact that materia medica, therapeutics and other branches taught in medical schools are also imparted at the osteopathic college cannot extend the right of osteopaths to practice medicine. The same branches might be taught at the College of Pharmacy or the University Dental School, but the right to practice medicine would not accrue to dentists and pharmacists, although they also are excepted from the provisions of the Medical Act of 1911. If instruction in hygiene included a course of scientific plumbing, that teaching would not establish a privilege for osteopaths to engage in the business of plumbing without complying with the requirements of the Act of June 7, 1911 (P. L. 680), providing for the examination and registration of persons in the business of plumbing or house drainage. It is equally true that the extension of instruction in the college of osteopathy to embrace subjects taught in the veterinary schools would not authorize osteopaths to practice veterinary medicine without complying with the provisions of the Act of May 5, 1915, (P. L. 248).

It was said in State v. Bonham, 161 Pac. Rep. 377, 379: "We think, that the framers (of the statutes) regarded the practice of medicine and surgery and the practice of osteopathy, as separate and distinct methods of treating the sick and afflicted and intended to confine the practitioners of each to the particular system he professed to practice; in other words, the system in which he had been educated."

This has been the view held in all the cases to which our attention has been called, but as we have stated before, the question of defendant's guilt under the indictment was submitted to the jury and every right was accorded him of having the jury pass upon the question as to whether he practiced medicine in violation of the Act

Opinion of the Court. [75 Pa. Superior Ct.

of 1911, and the jury having found against him we can see no reason to set aside the verdict.

The judgment is affirmed, and it is ordered that the defendant, appellant, appear in the court below at such time as he may be there called, and that he be by the court committed until he has complied with the sentence.